# EXHIBIT A

PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

7/7/2025 8:05:17 PM

Clerk of the Superior Court
By M. Schwenke ,Deputy Clerk

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| MILTITA CASILLAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KENDRA SCOTT, LLC, a Tennessee entity, d/b/a WWW.KENDRASCOTT.COM,<br><br>Defendant. | Case No. 25CU035457C<br><br>**CLASS ACTION COMPLAINT FOR: (1) VIOLATION OF CAL. BUS. & PROF. CODE § 17501; AND (2) CONSUMERS LEGAL REMEDIES ACT, CAL. CIVIL CODE § 1750 ET SEQ.** |

CLASS ACTION COMPLAINT

## I.    NATURE OF ACTION

Defendant advertises fictitious regular prices (and corresponding phantom discounts) on products sold through its website at **www.kendrascott.com** (the "Website"). This practice allows Defendant to fabricate a fake "reference price," and present the actual price as "discounted," when it is not. The result is a sham price disparity that is *per se* illegal under California law.

## II.    JURISDICTION AND VENUE

1. This Court has jurisdiction over all causes of action asserted herein.

2. Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States." Indeed, Plaintiff is informed and believes and thereon alleges that Defendant generates a minimum of eight percent of its national Website sales to Californians such that the Website "is the equivalent of a physical store in California." Since this case involves false representations made Defendant's Website and Plaintiff's purchase was made through the Website from within California, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal. App. 5th 1231, 1235 (2020).

3. Venue is proper in this County pursuant to California Code of Civil Procedure section 394(b) because some of the class members claims arose in this County.

## III.    PARTIES

4. Plaintiff is a citizen and resident of California who purchased a product identified below from Defendant's Website.

5. Defendant is an online retailer that sells products nationwide and in California.

## IV.    FACTUAL ALLEGATIONS

6. Defendant, through its Website, offers products for sale to California consumers.

7. Defendant advertises fictitious prices (and corresponding phantom discounts) on such products. This practice allows Defendant to fabricate a fake "reference" price, and present the actual price as "discounted," when it is not.

8. On April 29, 2025, Plaintiff purchased "Holland Vintage Silver Hoop Earrings in White CZ" (the "Product") from Defendant for the "discounted" price of $89.97, which Defendant compared to a "strike-through" reference price of $120.00, after visiting the website shown below:



9. The reference price described in the preceding paragraph was not the "prevailing market price" in the 90 days preceding the above access date. Likewise, the advertisement does not "clearly, exactly and conspicuously" state the date upon which the reference price was the prevailing market price. Indeed, in the 90 days preceding plaintiff's purchase and beyond, Defendant was offering the exact same Product with a similar "phantom discount."

10. These pricing and advertising practices reflecting high-pressure fake sales are patently deceptive. They are intended to mislead customers into believing that they are getting a bargain by buying products from Defendant on sale and at a substantial and deep discount. The reference price is, therefore, an artificially inflated price. In turn, the advertised discounts are nothing more than phantom markdowns.

11. The Product purchased by Plaintiff was not offered for sale on Defendant's Website primarily at the reference price during the 90 days preceding plaintiff's purchase, such that the reference price was not the "prevailing price" for the Product during the period.

12. Defendant knows that the prices for the Product are fake and artificially inflated and intentionally uses them in its deceptive pricing scheme on its Website to increase sales and profits by misleading consumers to believe that they are buying products at a substantial discount. Defendant

thereby induces customers to buy products they never would have bought—or at the very least, to pay more for merchandise than they otherwise would have if Defendant was simply being truthful about its "sales."

13.     The effectiveness of Defendant's deceitful pricing scheme is supported by longstanding scholarly research. In the seminal article entitled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. PUB. POL'Y & MKTG. 52, 55 (1992). Therefore, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases." *Id.* at 56. For this reason, in *Hinojos*, the Ninth Circuit held that a plaintiff making a claim of deceptive pricing (strikingly similar to the claim at issue here) had standing to pursue his claim against the defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

14.     Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It or Not*, 36 J. OF CONSUMER AFFAIRS 287 (2002). The professors also found that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id.*

15.     In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. OF BUS. RESEARCH 67 (2011).

16. Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey-Mullikin, "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions." Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price on Consumer Price Expectations*, 79 J. OF RETAILING 225 (2003).

17. The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy Thomas Fitzgerald, came to the conclusion that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation into the Effects of Advertised Reference Prices on the Price Consumers Are Willing to Pay for the Product*, 6 J. OF APP'D BUS. RES. 1 (1990). This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price." *Id.*

18. The unmistakable inference to be drawn from this research and the Ninth Circuit's opinion in *Hinojos* is that the deceptive advertising through the use of false reference pricing employed here by Defendant is intended to, and does in fact, influence customer behavior by artificially inflating customer perceptions of a given item's value and causing customers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or spend more money for a product than they otherwise would have absent the deceptive advertising.

19. Plaintiff seeks damages and restitution. Plaintiff is permitted to seek equitable remedies in the alternative because Plaintiff has no adequate remedy at law.

20. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's claim under section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. (Cal. Bus. & Prof. Code § 17501.) Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under section 17501, while not being able to prove one or more elements of Plaintiff's legal claim under the Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750 *et seq.*, seeking damages.

21. In addition, to obtain a full refund as damages, Plaintiff must show that the Product that Plaintiff bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased a Product that Plaintiff would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

22. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase either the Product or other products from Defendant again in the future if Plaintiff could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the products, and that its discounts were truthful. But, without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, Plaintiff is unable to rely on Defendant's advertising in the future, and so Plaintiff cannot purchase products that Plaintiff would like to purchase.

## V.     CLASS ACTION ALLEGATIONS

23. Plaintiff brings this action on behalf of all persons similarly situated, and seeks certification of the following class:

> **All persons who purchased any product from Defendant's Website while in California within the statute of limitations period at a purported discount from a higher reference price.**

24. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

25. **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at

this time and can only be ascertained through appropriate discovery, but Plaintiff is informed and believes, and thereon, alleges that there are at least 50 members of the Class.

26. **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described in this Complaint.

27. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously.

28. **Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

    a) Whether, during the Class Period, Defendant advertised false reference prices of its products offered on its Website.

    b) Whether, during the Class Period, Defendant advertised price discounts from false reference prices on products offered on its Website.

    c) Whether Defendant's deceptive pricing scheme using false reference prices constitutes false advertising in violation of the California False Advertising Law under Business & Professions Code § 17501.

    c) Whether Defendant's deceptive pricing scheme using false reference prices violate the CLRA under Civil Code § 1770.

29. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

30. **Ascertainability.** Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more

databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

## VI. CAUSE OF ACTION

### FIRST CAUSE OF ACTION

**Violation of California's False Advertising Law**

**Cal. Bus. & Prof. Code § 17501**

31. Section 17501 of the Business and Professions Code provides in relevant part that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

32. Simply put, section 17501 means that if an item is "on sale" for 90 days or more, the seller is violating section 17501.

33. Here, the Product was not sold at the higher reference price in the 90 days prior to Plaintiff's purchase of the Product via the Website and Class members' purchases of Defendant's products via the Website.

34. As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff and members of the Class have suffered injury in fact and have lost money.

### SECOND CAUSE OF ACTION

**Violation of Consumers Legal Remedies Act**

**Cal. Civil Code § 1750 *et seq*.**

35. Plaintiff incorporates by reference the foregoing paragraphs as if set forth hereinafter.

36. The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods or services to any consumer. (Cal. Civ. Code § 1770(a).)

37. The practices described herein, specifically Defendant's advertising and sale of its products, were intended to result and did result in the sale of such products to the consuming public and violated and continues to violate section 1770(a)(13) of the Civil Code by "[m]aking false or misleading statements of fact concerning reasons for, existence of, or, amounts of, price reductions."

38. Plaintiff is an individual who acquired, by purchase, the Product, which is a good, for personal, family, or household purposes.

39. Defendant deceived Plaintiff by advertising the price of the Product in a misleading manner contrary to California statutes including section 17501 of the Business and Professions Code.

40. Defendant made material misrepresentations to deceive Plaintiff and Class members.

41. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and Class members. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and Class members, and depriving Plaintiff and Class members of their rights and money.

42. Defendant knew that the Product's advertising of its price on its Website was misleading and deceptive and the advertising of its other products on its Website was similarly misleading and deceptive.

43. Defendant's advertising of the Product was a material factor in Plaintiff's decision to purchase the Product. Based on Defendant's advertising of the Product, Plaintiff reasonably believed that the reference price of the Product purchased by Plaintiff was genuine. Had Plaintiff known the truth of the matter, *i.e.*, that the reference price of the Product was false or misleading, Plaintiff would not have purchased the Product.

44. Plaintiff and Class members have suffered injury in fact and have lost money as a result of Defendant's deceptive, unfair, and unlawful conduct.

45. More than 30 days ago and in complaint with the pre-filing notice provision of the CLRA, counsel for Plaintiff sent a letter notifying Defendant of the particular wrongdoing that violates the CLRA and demanded that Defendant appropriately correct its advertising and/or provide another appropriate remedy of the violations. Defendant has not corrected its advertising and/or otherwise provided an appropriate class remedy of the violations.

## THIRD CAUSE OF ACTION

### Common Law Fraud

47. The elements of cause of action for California common law fraud are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. *See Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

48. Each element of the cause of action for fraud is present here, as shown by the following "Who, What, When, Where, and Why" summary:

a. **Who**: The false representations were made by Defendant and the individuals employed by Defendant who are responsible for pricing, marketing, and website representations, including those who determine how pricing is displayed on Defendant's online platform and promotional materials.

b. **What:** The false representation was the use of a strike-through or "original" price next to a lower "sale" price, falsely indicating that consumers were receiving a meaningful discount. The specific concealment was that the "original" price was either fabricated or rarely, if ever, used as the actual selling price, and thus, the comparison was deceptive.

c. **When**: The misrepresentation has been made continuously during the statute of limitations period, as it is made each time a consumer views the product listing and/or purchases the product at a purportedly discounted price — including when Plaintiff made the purchase.

d. **Where:** The misrepresentation was made on Defendant's website and digital marketing materials, where the product was displayed with a false strike-through price alongside a lower advertised price.

e. **Why:** Defendant made the misrepresentation to induce consumers to purchase the product under the belief that they were receiving a bargain, to increase sales volume, to create artificial urgency or value, and to take market share and profits from its competitors.

f. **Knowledge:** Defendant knows that the "original" or strike-through prices are not genuine and do not reflect a bona fide former price. Defendant knows that consumers rely on pricing representations when making purchase decisions and knows it is misleading consumers by fabricating a false discount.

     g.    **Intent to Defraud:** Defendant intends for consumers to purchase products under the mistaken belief that they are receiving a substantial discount off a regular price, so that Defendant can capture sales it would not otherwise receive and can increase profits under false pretenses.

     h.    **Justifiable Reliance:** Plaintiff's reliance on the strike-through pricing was reasonable, as consumers reasonably expect that an "original" price reflects a real former price and that the "sale" price reflects a limited-time discount. Defendant's pricing format was intended to—and did—deceive reasonable consumers like Plaintiff.

     i.    **Resulting Damage:** Plaintiff was damaged by paying more for the product than Plaintiff would have paid had Plaintiff known that the "original" price was not genuine. To be clear, Plaintiff changed position in reliance upon the fraud (by purchasing the product believing it to be on sale) and was damaged by that change of position (by not receiving the bargain Plaintiff reasonably believed existed).

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a.    For an order certifying that the action be maintained as a class action, that Plaintiff be designated as the class representative, and that undersigned counsel be designated as class counsel;

b.    For all available legal, equitable, and declaratory relief;

c.    For statutory damages;

d.    For attorneys' fees and costs as allowed by law; and

e.    For any and all other relief at law or equity that may be appropriate.

Dated:  July 6, 2025                        PACIFIC TRIAL ATTORNEYS, APC

                                             By: _____
                                             Scott. J. Ferrell
                                             Attorneys for Plaintiff